UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISMAIL JAMOUA,

    Plaintiff,

v.                                              Case No. 09-13604
                                                 Paul D. Borman
                                                 United States District Judge

CCO INVESTMENT SERVICES CORP.,

    Defendant.
_____/

OPINION AND ORDER
(1) GRANTING DEFENDANT CCO INVESTMENT SERVICES CORPORATION'S
MOTION TO CONFIRM ARBITRATION AWARD AND REQUEST FOR ENTRY OF
JUDGMENT (DKT. NO. 6) AND
(2) DENYING PLAINTIFF'S FIRST AMENDED APPLICATION TO VACATE
ARBITRATION AWARD (DKT. NO. 3)

This matter is before the Court on (1) Defendant CCO Investment Services Corporation's ("CCO") Motion to Confirm Arbitration Award and Request for Entry of Judgment (Dkt. No. 6) and (2) Plaintiff's Amended Application to Vacate Arbitration Award (Dkt. No. 3). Plaintiff seeks to vacate the Arbitration Award (the "Award"), rendered on August 14, 2009, by the Arbitration Panel (the "Panel") of the Financial Industry Regulatory Authority ("FINRA" - formerly the National Association of Securities Dealers, "NASD"). Plaintiff has not provided the Court with any transcript from the three day arbitration hearing before the Panel or any of the evidence that was considered by the Panel in rendering the Award. Plaintiff contends that the Award, on its face, supports his claim.

A hearing was held on March 4, 2010. For the reasons that follow, the Court GRANTS

1

CCO's Motion to Confirm Arbitration Award and Request for Entry of Judgment, and DENIES Plaintiff's Amended Application to Vacate Arbitration Award.

I.  **INTRODUCTION**

The essence of the dispute before the Panel was CCO's claim that Plaintiff failed to repay $120,000 owed on a Promissory Note (the "Note"), and Plaintiff's counterclaim that he was fraudulently induced to enter into an employment agreement with CCO.

Plaintiff accepted a position with CCO on or about March 22, 2007, and claims that he was promised a book of business in the amount of $4 million, and access to certain customers and accounts. (FINRA Award, Pet. Ex. 1 at 2.) (Hereinafter the "Award"). CCO claims that it extended Plaintiff the Note, in the amount of $150,000, at the onset of his employment, to assist him with getting started in his new position. Under the terms of the Note, it became payable in full when Plaintiff left his employment with CCO. Plaintiff resigned from CCO on or about May 12, 2008, at which time he owed $120,000 on the Note. (Award 1-2.)

The parties agreed, as part of the employment contract, to submit disputes for resolution to FINRA, which they did in this case. CCO filed a claim in arbitration to recover on the Note and Plaintiff filed a counterclaim, alleging that he had been fraudulently induced to enter into the employment agreement. Following three days of hearings, at which both parties were represented by counsel, and also based on the parties' pleadings and other evidence submitted at the hearing, the Panel issued an award in favor of CCO in the amount of $133,500, and an award in favor of Plaintiff in the amount of $3,500, for a net award to CCO, after set-off of the award to Plaintiff, of $130,000, plus 4.64% per annum post-award interest on the compensatory damage portion ($120,000) through and including final payment of the Award. (Award 4.)

## II. BACKGROUND

As an initial matter, the Court notes that neither party has provided the Court with any of the evidence, pleadings, exhibits or a transcript of the proceedings before the FINRA. The burden is on the party seeking to vacate the award – in this case, Plaintiff – to come forward with evidence in support of its claim, not on the party moving to confirm the award. *Washington Mutual Bank, F.A. v. American Fin. Network*, 414 F. Supp. 2d 1155, 1157 (S.D. Fla. 2006) (citing *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000)). Plaintiff has failed to provide the Court with a transcript of the hearing or with any material, not even the original Claim or Counterclaim, that was before the Panel. The Court was provided with the Panel's Award. That being said, the following "facts" were presented by the parties in their briefs.

Plaintiff contends that he left banking positions, years at Chase Bank, and then months at Fifth Third Bank, to join CCO. Plaintiff alleges that CCO employees had first attempted to recruit him while he was still employed at Chase Bank. (Pet. 5.) Plaintiff states that he did not join CCO initially, but instead left Chase Bank to work for Fifth Third Bank, which he left at CCO's urging, including a promise of a higher salary. (Pet. 5-6.)

Plaintiff contends that he was promised an annual income of $150,000, an investment book of business worth $40 million, access to retail accounts worth $250 million, regularly scheduled appointments at various banks and a viable website to conduct his business. (Pet. 6.) Plaintiff states that based upon these assurances, he accepted a contract of employment and executed a separate promissory note in favor of CCO to provide him with some income while he ramped up his own book of business. Under the terms of the loan, repayment was to be made in five annual installments but if Plaintiff was employed at each time a repayment was due, that payment plus accrued interest

3

would be forgiven. (Pet. 6.) Plaintiff commenced employment with CCO on March 21, 2007. (Pet. 6.) Plaintiff contends that he was "forced" to leave employment with CCO on May 12, 2008, because none of the assurances allegedly made to induce him to accept employment with CCO ever came to fruition. (Pet. 7-8.)

CCO first argues that this Court should strike Plaintiff's Petition, which is not supported by any record evidence, and should confirm the Panel's Award. (Mot. 11.) CCO responds to Plaintiff's claims, stating that the contract between the parties contained an integration clause, and that in any event CCO never made the promises alleged by Plaintiff, that Plaintiff in fact worked for CCO for over 13 months and used the proceeds of the Note to pay down his personal home mortgage, and further earned over $100,000 in commission income and draws before choosing to terminate his employment with CCO. (Mot. 10.)

## III. STANDARD OF REVIEW

CCO moves the Court pursuant to section 9 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA") to confirm the FINRA award. Section 9 provides in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Any application to the court is to be made in the form of a motion. 9 U.S.C. § 6. The parties do not dispute that the FAA governs this matter, that the parties are properly before this Court, or that CCO's motion for an order confirming the award is timely.

It is well established that a court's review of an arbitration award is extremely narrow and highly deferential. "The FAA expresses a presumption that arbitration awards will be confirmed."

4

*Nationwide Mutual Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005). The Supreme Court recently reiterated the limited power of a court to disturb an arbitration award:

> On application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies.

*Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).

> Section 10 lists four grounds for vacating an arbitration award:
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

> Section 11 lists three grounds for modifying an award:
>
> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

Plaintiff does not cite any of these grounds as a basis for vacating or modifying the award

but instead claims that the award was made in "manifest disregard of the law." (Pet. 3.) Discussing the "manifest disregard" standard, the Sixth Circuit stated in *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000):

> An arbitration decision "must fly in the face of established legal precedent" for us to find manifest disregard of the law. [*Merrill Lynch, Pierce Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)] An arbitration panel acts with manifest disregard if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Id.* Thus, to find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it. *See M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844, 851 n. 3 (6th Cir.1996) (noting that if its review of an arbitral award were based on FAA standards, there was no manifest disregard since any mistake in applying the law was inadvertent and not based on a conscious decision to ignore the law). Arbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law. *See* [*Jaros, supra* at 420].

## IV. ANALYSIS

Plaintiff asserts that the fact that he has not provided this Court with any of the evidence presented to the Panel, or a transcript of the proceedings below, or even a copy of the Claim or Counterclaim, does not preclude this Court from finding in his favor because the award, on its face, manifestly disregards law. Plaintiff argues that, in awarding Plaintiff compensatory damages in the amount of $3,500, the Panel necessarily found that Plaintiff had been fraudulently induced to enter into the contract of employment with CCO and therefore the Panel, in making that $3,500 award, must have concluded that the Note was voidable. Plaintiff argues that an award of any amount of damages to Plaintiff was inherently inconsistent with the Panel's presumed finding that the Note was voidable. Plaintiff's counsel conceded to this Court at the March 4, 2010 hearing that he made this same argument to the Panel, i.e. that if the Panel found fraud in the inducement of the employment agreement it could not enforce the Note. The panel rejected that argument, and enforced the Note.

6

This Court cannot disturb the Panel's award unless "absolutely no rational means [can] be determined by which the Panel may have come to its decision. If any such path to the Award may be forged, this Court must affirm the Panel's decision." *Fitzgerald v. H&R Block Fin. Advisors, Inc.*, No. 08-10784, 2008 WL 2397636 at * 5 (E.D. Mich. June 11, 2008) (unpublished). "[E]ven errors in the interpretation and application of the law will not be enough to overturn an arbitration panel's decision." *Id.* "[E]ven a misapplication of well defined and explicit legal principles does not constitute manifest disregard." *Merrill Lynch, Pierce Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

In the instant matter, because Plaintiff has not provided a transcript of the hearing before the Panel, or provided the Court with any of the evidence that was presented to the Panel, or even a copy of the original Claim or Counterclaim, this Court is asked to speculate as to what the Panel may have been thinking when it awarded $3,500 in compensatory damages to Plaintiff (who claimed damages in excess of $170,520) while at the same time awarding $133,500 ($120,000 in compensatory damages, $7,500 in pre-award interest pursuant to the terms of the Note and $6,000 in late fee penalties pursuant to the terms of the Note) to CCO, for a net award, after set-off of $3,500, to CCO in the amount of $130,000, plus post-award interest on the compensatory damages of $120,000 at the rate of 4.64% per annum pursuant to the terms of the Note. (Pet. Ex. 1 at 3-4.) While the Court is prohibited from and will not engage in such speculation, it can and does conclude that the Award itself does not, on its face, demonstrate manifest disregard for the law.

First, the Panel awarded both pre- and post- judgment interest, as well as late fee penalties, to CCO specifically "pursuant to the terms of the Note." (Award ¶¶ 2, 3, 4.) This fully supports a finding that the Panel did not conclude that the Note was unenforceable.

7

Second, the conclusion that Plaintiff urges this Court to reach, i.e. that the Panel found that Plaintiff had been fraudulently induced to enter into the *employment agreement* and therefore that agreement was voidable, does not address the circumstances under which Plaintiff entered into the agreement on the *Note*, a separate agreement which was the document on which CCO presented its Claim to the FINRA. By filing his Counterclaim, Plaintiff necessarily introduced the separate employment agreement, and this Court has no way of divining whether the Panel may have considered the negotiations surrounding the Note as separate and apart from the negotiation of the employment agreement. Again, Plaintiff has failed to carry his burden to present evidence.

Finally, CCO suggests at least one possible explanation for the Panel's decision which defeats Plaintiff's argument that the Award is facially irreconcilable and therefore in manifest disregard of the law. CCO argues that, even assuming that the Panel found that CCO intentionally or innocently made misrepresentations that induced Plaintiff to join CCO, it also could have concluded that he affirmed any such "voidable" contract by continuing to work for CCO for 14 months, earning over $100,000 in W-2 income and commissions and accepting and using the $150,000 in loan proceeds for his personal benefit, including paying down the principal balance on his mortgage. CCO cites *LaFazia v. Howe*, 575 A.2d 182, 183-185 (R.I. 1990) in support of its argument that such acts of performance by Plaintiff constituted affirmance of the contract.[1] Plaintiffs in *LaFazia* were disappointed purchasers of a delicatessen, which brought in far less money per year than promised by the seller. Instead of maintaining an action for rescission when they realized they had been taken, the purchasers continued to make payments on the contract, which the court held constituted affirmance of the contract and left as purchaser's sole remedy an action

---

[1] The parties agree that Rhode Island law governs the dispute.

for damages. *Id.* 183-185.

CCO states that Plaintiff testified that he realized within 2-3 weeks after joining CCO that the alleged promises were not true. CCO states that, despite this awareness, Plaintiff accepted the loan proceeds, used them to pay off his home mortgage, and continued to work for CCO for 14 months, earning over $100,000 in commissions. Under this scenario, as *LaFazia* instructs, the Panel could have found fraud and yet enforced the Note and awarded damages as it saw fit to both Plaintiff and CCO. It was within the distinct province of the Panel to decide from the evidence what damages, if any, Plaintiff actually sustained. Thus, it is not necessarily the case, as Plaintiff urges this Court to conclude, that the Panel's award of $3,500 in damages to the Plaintiff was inherently inconsistent with an award of damages to CCO.

The Panel in this case did not provide any discussion or rationale for its decision, and it was not required to do so. *See* FINRA Code of Arbitration Procedure for Industry Disputes, Rule 12904. Where, as here, the party moving to vacate the award provides no transcript or record evidence, but presents only self-serving and conclusory allegations unsupported by any record evidence, it is impossible for this Court to determine that the Panel was guilty of misconduct. *Washington Mutual, supra* at 1157. To reiterate, Plaintiff's counsel informed the Court at the March 4, 2010 hearing, Plaintiff made the same "legal" argument to the Panel that it now makes to this Court, i.e. that the Panel could not find fraud in the inducement of the employment agreement and also award damages to CCO on the Note. This Court assumes that the Panel, which held three days of evidentiary hearings during which it heard sworn testimony from 5 witnesses and received into evidence over twenty documents, considered this argument and based its Award on a legally supportable rationale, perhaps that suggested by CCO. This Court rejects Plaintiff's argument that the Award is

9

irreconcilable on its face and finds that Plaintiff has failed to sustain his burden of presenting evidence to support his request that this Court vacate the Award.

V. **CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's First Amended Application to Vacate Arbitration Award (Dkt. No. 3) and GRANTS CCO's Motion to Confirm Arbitration Award and Request for Entry of Judgment (Dkt. No. 6). The Court DENIES CCO's request for an award of attorneys' fees incurred in connection with Plaintiff's First Amended Application to Vacate Arbitration Award.

IT IS SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 10, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 10, 2010.

S/Denise Goodine
Case Manager